In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 13-3004

MICHAEL KIENITZ,

*Plaintiff-Appellant,*

*v.*

SCONNIE NATION LLC and UNDERGROUND PRINTING-WISCONSIN, L.L.C.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 12-cv-464-slc — **Stephen L. Crocker**, *Magistrate Judge.*

———————

ARGUED JANUARY 24, 2014 — DECIDED SEPTEMBER 15, 2014

———————

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* While a student at the University of Wisconsin in 1969, Paul Soglin attended the first Mifflin Street Block Party, whose theme (according to Soglin) was "taking a sharp stick and poking it in the eye of authority." Now in his seventh term as Mayor of Madison, Wisconsin, Soglin does not appreciate being on the pointy end. He

wants to shut down the annual event. For the 2012 Block Party, Sconnie Nation made some t-shirts and tank tops displaying an image of Soglin's face and the phrase "Sorry for Partying." The 54 sales, on which Sconnie Nation cleared a small profit, led to this suit, in which photographer Michael Kienitz accuses Sconnie Nation and its vendor of copyright infringement.

Sconnie Nation concedes starting with a photograph that Kienitz took at Soglin's inauguration in 2011. Soglin (with Kienitz's permission) had posted it on the City's website, from which Sconnie Nation downloaded a copy. The photograph was posterized, the background was removed, and Soglin's face was turned lime green and surrounded by multi-colored writing. Here are the original and the revision:

 

A magistrate judge, serving by consent under 28 U.S.C. §636(c), granted summary judgment for the defendants, holding that Sconnie Nation had made fair use of the photo. 965 F. Supp. 2d 1042 (W.D. Wis. 2013).

Fair use is a statutory defense to infringement. The Copyright Act sets out four non-exclusive factors for a court to consider. 17 U.S.C. §107. The district court and the parties have debated whether the t-shirts are a "transformative use" of the photo—and, if so, just how "transformative" the use must be. That's not one of the statutory factors, though the Supreme Court mentioned it in *Campbell v. Acuff-Rose Music,*

*Inc.*, 510 U.S. 569, 579 (1994). The Second Circuit has run with the suggestion and concluded that "transformative use" is enough to bring a modified copy within the scope of §107. See, e.g., *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013). *Cariou* applied this to an example of "appropriation art," in which some of the supposed value comes from the very fact that the work was created by someone else.

We're skeptical of *Cariou*'s approach, because asking exclusively whether something is "transformative" not only replaces the list in §107 but also could override 17 U.S.C. §106(2), which protects derivative works. To say that a new use transforms the work is precisely to say that it is derivative and thus, one might suppose, protected under §106(2). *Cariou* and its predecessors in the Second Circuit do not explain how every "transformative use" can be "fair use" without extinguishing the author's rights under §106(2).

We think it best to stick with the statutory list, of which the most important usually is the fourth (market effect). We have asked whether the contested use is a complement to the protected work (allowed) rather than a substitute for it (prohibited). See *Ty, Inc. v. Publications International Ltd.*, 292 F.3d 512 (7th Cir. 2002); *Chicago Board of Education v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003). A t-shirt or tank top is no substitute for the original photograph. Nor does Kienitz say that defendants disrupted a plan to license this work for apparel. Kienitz does not argue that defendants' products have reduced the demand for the original work or any use of it that he is contemplating.

Here is the list in §107:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
>> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>>
>> (2) the nature of the copyrighted work;
>>
>> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>>
>> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Other than factor (4), which we have discussed already, only (3)—the amount taken in relation to the copyrighted work as a whole—has much bite in this litigation. Defendants removed so much of the original that, as with the Cheshire Cat, only the smile remains. Defendants started with a low-resolution version posted on the City's website, so much of the original's detail never had a chance to reach the copy; the original's background is gone; its colors and shading are gone; the expression in Soglin's eyes can no longer be read; after the posterization (and reproduction by silk-screening), the effect of the lighting in the original is almost extinguished. What is left, besides a hint of Soglin's smile, is the outline of his face, which can't be copyrighted. Defendants could have achieved the same effect by starting with a snapshot taken on the street.

The other statutory factors don't do much in this case. Consider (1), for example. Defendants sold their products in the hope of profit, and made a small one, but they chose the design as a form of political commentary. Factor (2) is unilluminating, and as we have mentioned Kienitz does not ar-

gue that defendants' acts have reduced the value of this photograph, which he licensed to Soglin at no royalty and which
is posted on a public website for viewing and downloading
without cost.

Two things can be said for Kienitz. First, defendants did
not need to use the copyrighted work. They wanted to mock
the Mayor, not to comment on Kienitz's skills as a photographer or his artistry in producing this particular photograph.
There's no good reason why defendants should be allowed
to appropriate someone else's copyrighted efforts as the
starting point in their lampoon, when so many noncopyrighted alternatives (including snapshots they could
have taken themselves) were available. The fair-use privilege
under §107 is not designed to protect lazy appropriators. Its
goal instead is to facilitate a class of uses that would not be
possible if users always had to negotiate with copyright
proprietors. (Many copyright owners would block all parodies, for example, and the administrative costs of finding
and obtaining consent from copyright holders would frustrate many academic uses.)

Second, this use may injure Kienitz's long-range commercial opportunities, even though it does not reduce the
value he derives from this particular picture. He promises
his subjects that the photos will be licensed only for dignified uses. Fewer people will hire or cooperate with Kienitz if
they think that the high quality of his work will make the
photos more effective when used against them! But Kienitz
does not present an argument along these lines, and the consideration in the preceding paragraph is not enough to offset
the fact that, by the time defendants were done, almost none

of the copyrighted work remained. The district court thus reached the right conclusion.

AFFIRMED